UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| JOSEPH THOMAS and NICI THOMAS, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 6:19-CV-226-REW |
| | ) | |
| v. | ) | |
| | ) | OPINION & ORDER |
| TROOPER STEVE WALKER, et al., | ) | |
| | ) | |
| Defendants. | | |

\*\*\* \*\*\* \*\*\* \*\*\*

A late-night execution of an arrest warrant and seizure of a cell phone yielded this case. Plaintiffs Joseph Thomas and Nici Thomas initiated this civil-rights action against Defendants KSP Troopers Steve Walker, Shawn Boroviak, Michael Logan Howell, Logan Gray[1] (collectively, Defendant Troopers), KSP Forensic Examiner Kim Bradley, and the Department of the Kentucky State Police. DE 8. According to Plaintiffs, Defendant Troopers inflicted gratuitous violence on Mr. Thomas after his arrest. Additionally, Walker allegedly deleted from Mrs. Thomas's cell phone video evidence of the attack and then conspired with Bradley to conceal the deletion. Plaintiffs assert various violations of their Fourth and Fourteenth Amendment rights and bring state-law claims for assault and battery, conversion, and punitive damages. *Id.*

I.    **FACTUAL BACKGROUND**

In Plaintiffs' version, the seeds of this dispute were planted in July 2018, when two officers with the Corbin Police Department arrested Mr. Thomas for operating a vehicle under the influence and other charges. *See* DE 8 ¶ 13. Mrs. Thomas spoke with one of the arresting officers, Patrolman

---

[1] Although he is named in the complaint as "Trooper Logan Gray," several filings by Defendants identify him as "Logan Gay." *See, e.g.*, DE 4; DE 16; DE 18. *But see* DE 6.

Justin Walker, who informed her that her husband would be released the following morning. *Id.* ¶¶ 14–15. For reasons unclear, Mr. Thomas's matter was not on the docket the following day, and his release did not occur as promised. *Id.* ¶ 16. Mrs. Thomas called the Corbin Police Department to complain about Walker. *Id.* ¶ 17. Plaintiffs allege that Walker was "not reprimanded or otherwise affected" by the complaint. *Id.* ¶ 18.

On the evening of September 20, 2018,[2] Walker's father, Defendant Walker, saw Mr. Thomas driving in East Bernstadt, Kentucky. *Id.* ¶¶ 19–20. Mr. Thomas used his turn signal, pulled into a driveway, began driving in the opposite direction, and then pulled into another driveway; Walker activated his emergency equipment and approached the vehicle. *Id.* ¶¶ 21–23. Some interaction occurred before Mr. Thomas fled the scene and evaded arrest. *Id.* ¶ 24. Walker was able to identify both Mr. Thomas and his home address. *Id.* ¶ 25.

Near midnight on September 23, 2018, Defendant Troopers went to Mr. Thomas's residence to execute a felony arrest warrant for various charges. *Id.* ¶ 27; DE 40 at 2 (listing charges as "driving under the influence, possession of methamphetamine, driving on a DUI-suspended license, resisting arrest, fleeing or evading police, and improper signal"); DE 41 at 19 (identifying charges as "possession of a controlled substance, resisting arrest, operating a motor vehicle under the influence of alcohol or drugs, and fleeing or evading the Police"). Mr. Thomas fled once more, and Defendant Troopers apprehended him in some nearby brush. DE 8 ¶¶ 28–29. Plaintiffs allege that, after Defendant Troopers handcuffed Mr. Thomas, they "began assaulting Mr. Thomas, striking him numerous times with punches, kicks and a flashlight, (ii) tasing [him] multiple times,

---

[2] The Court notes an obvious typographical error in the complaint, which states that this incident occurred in 2019.

and (iii) proceeding to beat [him], breaking [his] orbital bone and inflicting other grievous injuries upon [him]." *Id.* ¶ 31.

Mrs. Thomas and her sons were present during the arrest and heard Defendant Troopers shouting expletives and insults. *Id.* ¶ 34. Mrs. Thomas used her phone to record what was happening. *Id.* ¶ 33. When Mrs. Thomas told Walker that she had recorded the entire incident on her phone, one Defendant Trooper grabbed the phone from her hand. *Id.* ¶¶ 40–41. Defendants purport to have taken the phone as evidence of a crime. *Id.* ¶ 49. Upon being confronted by one of Mrs. Thomas's sons at the scene, one Defendant Trooper poked the son in the chest and threatened to detain him. *Id.* ¶ 42. Plaintiffs estimate that the ordeal lasted until about 12:20 a.m. *Id.* ¶ 44.

Following the arrest, Mr. Thomas was indicted on numerous charges. For his conduct on September 20, 2018, the initial encounter with Walker: fleeing or evading, first degree; possession of a controlled substance, first degree; operating a motor vehicle while under the influence of intoxicants, second offense; driving a motor vehicle while license is revoked or suspended for driving under the influence, first offense; resisting arrest; failure to signal; and persistent felony offender, first degree. *See* DE 16-1 (Indictment, Counts One, Two, Five, Six, Seven, Nine, and Ten). For his conduct on September 23, 2018: fleeing or evading, first degree; assault in the third degree (on an officer); and resisting arrest. *See id.* (Counts Three, Four, and Eight). With respect to the assault charge, the indictment stated that, on the night of the arrest, Mr. Thomas fought Trooper Gray and broke his hand. *See id.* Mr. Thomas ultimately pleaded guilty to several charges, including both counts of resisting arrest. *See* DE 41 at 19. The assault charge was dismissed. *Id.*

Plaintiffs now argue that the assault charge was baseless and unconstitutional. In particular, Plaintiffs allege that "[t]he aggravated assault charge was intended to force Mr. Thomas to forgo his 6th amendment rights and resulted from the fact that one of the Defendant Troopers broke his

3

hand while punching Mr. Thomas in the face." DE 8 ¶ 37. According to Plaintiffs, "[t]he KSP condones and it is a common practice, policy or procedure to charge criminal defendants injured during an arrest with Assault 3rd Degree to gain leverage in the plea bargaining process." *Id.* ¶ 39.

Additionally, Plaintiffs claim that Defendants mishandled Mrs. Thomas's phone while it was in KSP custody. First, Walker accessed the phone at 4:20 a.m. on the morning of Mr. Thomas's arrest. *Id.* ¶¶ 45, 52–53. Plaintiffs identify numerous applications that Defendants allegedly accessed. *Id.* ¶ 47. Second, Walker did not immediately submit the phone for evidence examination and only did so thirty-five days later upon the request of Mr. Thomas's counsel in the state criminal proceedings. *Id.* ¶¶ 50–51, 56–57. Third, Plaintiffs claim that Walker's true objective in seizing the phone was to delete the video taken by Mrs. Thomas and that he did in fact do so. *Id.* ¶¶ 54–55. Fourth, Plaintiffs aver that Examiner Bradley covered up Walker's deletion by falsely reporting that the only application KSP opened on the phone was a web browser referencing Craigslist. *Id.* ¶¶ 68–70. Fifth, Plaintiffs argue that Bradley intentionally corrupted the phone's data by taking a picture with the phone's camera. *Id.* ¶¶ 71–74.

According to the complaint, KSP bears liability for customs and practices regarding evidence handling. *See id.* ¶¶ 59–67. Plaintiffs maintain that KSP has been deliberately indifferent to trooper mishandling of phone recording evidence. *Id.* ¶ 59. Per Plaintiffs, "[t]he KSP custom and practice of refusing to discipline or only disciplining in a token manner KSP Troopers for violating individual constitutional rights creates an environment in the KSP the promotes violence and the destruction of evidence of the same." *Id.* ¶ 67.

## II.    PROCEDURAL BACKGROUND

In response to the original complaint (DE 1), Defendants timely filed two Rule 12 dismissal motions attacking both individual-capacity and official-capacity claims. DE 4; DE 6. Plaintiffs

directly responded to one of the dismissal motions and amended the complaint as a matter of course. DE 8 (First Amended Complaint); DE 9 ("Plaintiffs acknowledge that the 11th Amendment precludes the recovery of monetary damages against the KSP and the Official Capacity Defendants and hereby agrees to withdraw all claims for relief of monetary damages as it pertains to those specific Official Capacity Defendants.").

In the First Amended Complaint, Count One alleges that Defendant Troopers used unlawful force against Mr. Thomas in violation of the Fourth and Fourteenth Amendments. *See* DE 8 ¶¶ 81–83. Count One further states that, despite a lack of probable cause and in violation of the Fourteenth Amendment, Mr. Thomas was charged with assault. *Id.* ¶¶ 84–86. Count Two seeks declaratory and injunctive relief against all Defendants in their official capacities for the above-described unconstitutional policies. *See id.* ¶¶ 87–96. Count Three alleges that Walker violated Mrs. Thomas's Fourth and Fourteenth Amendment rights by taking her phone, tampering with it, deleting the video of the incident, and conspiring with Bradley to cover up the fact of deletion. *See id.* ¶¶ 97–106. Count Four asserts state-law assault and battery claims against Defendant Troopers. *See id.* ¶¶ 107–09. Count Five alleges that Walker and Bradley converted Mrs. Thomas's phone. *See id.* ¶¶ 110–12. Count Six seeks punitive damages. *See id.* ¶¶ 113–14.

Defendants timely answered the amended complaint, DE 16, and moved for judgment on the pleadings, DE 18. Four days after the deadline, Plaintiffs responded to the motion for judgment on the pleadings, DE 25, and separately moved for leave to amend the First Amended Complaint, DE 26. The proposed second amended complaint seeks to add as a Defendant (in his official capacity) KSP Commissioner Rodney Brewer. DE 26; DE 39. Other than this addition, however, the proposed second amended complaint closely mirrors the First Amended Complaint. *Compare* DE 8, *with* DE 39. Plaintiffs summarize the most recent changes as follows: the "Proposed Second

Amended Complaint eliminates the official capacity claims against the individual troopers, while adding Commissioner Brewer as the official capacity Defendant and modifying the claims from a demand for damages to a plea for injunctive and declaratory relief." DE 41 at 3.[3]

Defendants moved to strike Plaintiffs' untimely response (DE 25) to the motion for judgment on the pleadings (DE 18). DE 29. Plaintiffs then moved for leave to file the untimely response, DE 30, an effort that Defendants opposed, DE 34. Defendants further replied in support of their motion for judgment on the pleadings, incorporating some of their earlier Rule 12 dismissal arguments. *See* DE 28 at 2 ("Those claims are addressed in Defendants' Joint Motion to Dismiss Individual Capacity Claims (DN 6)."). Defendants opposed the sought amendment and rightly protested that Plaintiffs had failed to attach a copy of the proposed amended pleading. DE 33.

Upon review of the record, the Court previously noted that the filing of the First Amended Complaint (DE 8) mooted Defendants' original dismissal motions (DE 4 and DE 6). DE 38. The Court also acknowledged (as pointed out by Defendants) that Plaintiffs had not tendered the proposed second amended complaint along with the motion seeking leave to amend (DE 26). *Id.* The Court ordered Plaintiffs to supplement the motion with the proposed second amended complaint and directed Defendants to respond, addressing amendment propriety and alleged futility. *Id.* Plaintiffs tendered the proposed pleading, Defendants restated their opposition to complaint amendment, and Plaintiffs replied. DE 39; DE 40; DE 41. All matters are now ripe for consideration.

---

[3] The Court notes that the *First* (not the *proposed second*) Amended Complaint dropped the damages claims against official-capacity Defendants and included a demand for declaratory and injunctive relief. *See* DE 8 at 15; DE 9 at 1–2. Thus, the truly novel aspects of the proposed second amended complaint are the abandonment of any official-capacity theory against any previously joined Defendant and the assertion of Count Two against Brewer in his official capacity. *Compare* DE 8, *with* DE 39.

6

### III.     STANDARD

Under Rule 15(a), the Court should allow parties to amend their pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2). "Rule 15 reinforces the principle that cases should be tried on their merits rather than on the technicalities of pleadings." *Granus v. N. Am. Philips Lighting Corp.*, 821 F.2d 1253, 1255–56 (6th Cir. 1987). But, "courts need not give leave to amend when doing so would be futile." *SFS Check, LLC v. First Bank of Del.*, 774 F.3d 351, 355 (6th Cir. 2014). For example, a "court may deny a motion for leave to amend a complaint if such complaint, as amended, could not withstand a motion to dismiss." *Neighborhood Dev. Corp. v. Advisory Council on Historic Pres.*, 632 F.2d 21, 23 (6th Cir. 1980).

Under Rule 12, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 127 S. Ct. 1955, 1974 (2007)). The Court "must construe the complaint liberally in favor of the complaining party." *White v. United States*, 601 F.3d 545, 551 (6th Cir. 2010). But, "a formulaic recitation of a cause of action's elements will not do." *Twombly*, 127 S. Ct. at 1965. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949. However, courts need not accept "legal conclusion[s] couched as [] factual allegation[s]." *Papasan v. Allain*, 106 S. Ct. 2932, 2944 (1986).

Additionally, "[a]t the pleading stage, plaintiffs bear the burden of alleging facts establishing each element of standing." *Shelby Advocates for Valid Elections v. Hargett*, 947 F.3d 977, 981 (6th Cir. 2020). A plaintiff "must plead its components with specificity." *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 494 (6th Cir. 1999). "If Plaintiffs cannot establish constitutional standing, their claims must be dismissed for lack of subject matter jurisdiction." *Loren v. Blue*

*Cross & Blue Shield*, 505 F.3d 598, 607 (6th Cir. 2007). Because constitutional standing relates to the Court's subject matter jurisdiction, the Court may raise the issue *sua sponte*. *Id.*

## IV.    ANALYSIS

Defendants focus their opposition to amendment on Counts One through Three. *See* DE 40. The Court considers each.

### A.  Count Two

In Count Two, Plaintiffs challenge alleged KSP policy (or lack thereof) in the following areas: the seizure of phones without probable cause, the improper retention of phones by KSP Troopers, the failure by KSP Troopers to follow evidence protocols, KSP Troopers' use of or tampering with phones in custody, and the practice of indiscriminately charging assault third whenever a KSP Trooper injures a suspect or criminal defendant. Plaintiffs move to amend the complaint to include KSP Commissioner Rodney Brewer as an official-capacity Defendant. DE 26. Plaintiffs argue that this amendment does not "materially change" the claims but rather corrects a "technicality" previously raised in Defendants' motion for judgment on the pleadings. *Id.*; *see* DE 18 at 5–7 (arguing that Plaintiffs may not bring *Ex parte Young* claim directly against the agency and that joined Defendants lacked the required "connection between the act complained of and the official's authority").

Defendants now stake their opposition to complaint amendment on futility; they argue that Count Two fails to state a claim and that it is barred by *Heck v. Humphrey*, 114 S. Ct. 2364 (1994). DE 40 at 4. According to Defendants, Count Two does not state a claim because neither the failure to follow nor failure to enact policies amounts to a constitutional violation. *Id.* at 6–7. Defendants

do not elaborate on the *Heck* bar as it pertains to Count Two or Brewer.[4] In reply, Plaintiffs contend

that the policy deficits identified in Count Two implicate Fourth and Fourteenth Amendment rights

and that *Heck* does not bar the excessive-force claim. DE 41 at 7–13. Neither the response nor the

reply evaluates whether Count Two satisfies the foundational requirements of *Ex parte Young*.

"The Eleventh Amendment generally bars suits by citizens of a state against a state in

federal court." *League of Women Voters v. Brunner*, 548 F.3d 463, 474 (6th Cir. 2008). But, "a

suit to enjoin as unconstitutional a state official's action [is] not barred by the [Eleventh]

Amendment." *Papasan*, 106 S. Ct. at 2939. The *Ex parte Young* doctrine "allows suits against state

actors in their official capacities for injunctive relief because such actions are not deemed to be

against the State." *Gean v. Hattaway*, 330 F.3d 758 (6th Cir. 2003). The official sought to be

enjoined "must have some connection with the enforcement of the act, or else it is merely making

him a party as a representative of the State." *Ex parte Young*, 28 S. Ct. 441, 453 (1908).

Here, Count Two alleges constitutional violations at the policymaking level, and the

proposed amendment inculpates the logically relevant policymaking authority, the KSP

Commissioner. *See* DE 8; DE 39. Defendants previously sought dismissal because Plaintiffs had

not sued the official who governs policymaking in these areas. *See* DE 18 at 5–7. The proposed

second amended complaint corrects this defect by seeking to join the appropriate Defendant. And,

under the circumstances, Defendants' contrary arguments targeting Count Two do not counsel in

favor of denial. That the failure to follow or enact policies is not a *per se* constitutional violation

does not categorically defeat Count Two. Rather, whether such conduct amounts to a constitutional

---

[4] Defendants later conclude that "the fabrication/destruction of evidence claims, conspiracy claim, and false arrest [claim] . . . are likewise barred [by *Heck*] when asserted against the KSP Commissioner." *See* DE *id.* at 23. The Court does not read the proposed second amended complaint to assert these claims against Brewer.

violation depends on the specific nature of the deviation from or gap in policy. The Court may agree that the KSP need not enact a policy prohibiting the indiscriminate charging of assault third without probable cause; basic probable cause training and standard charging protocols cover this ground. But not all of Plaintiffs' policy challenges are so obvious. Some could plausibly translate into a constitutional violation; for example, failure to follow evidence protocols or tampering with (read: destroying) exculpatory evidence could amount to a constitutional violation. As a result, the Court declines to deny amendment on Defendants' stated grounds.

But, that is not to say the proposed second amended complaint—or indeed, any iteration of Count Two—complies with the *other* requirements of *Ex parte Young* (and thus survives the futility analysis). Because Defendants previously raised sovereign immunity as a defense, *see* DE 4, and because the Court considers jurisdictional defects *sua sponte*, the Court reviews the basis for Count Two and concludes that the claim does not fall within the limited *Ex parte Young* exception.[5]

"In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md. Inc. v. PSC*, 122 S. Ct. 1753, 1760 (2002). "[C]ourts . . . look to the substance of the legal claim, not its formal description." *S&M Brands, Inc. v. Cooper*, 527 F.3d 500, 509 (6th Cir. 2008). "Declaratory relief is not prospective as required by the *Ex Parte Young* doctrine when it would serve to declare only past actions in violation of federal law: retroactive declaratory relief

---

[5] Defendants ultimately urge this same conclusion, but they do not highlight or develop the argument with respect to the seemingly crucial deficit: the *timing* of the supposed constitutional violations. *See* DE 40 at 24 ("The proposed amendment fails to state a claim of *ongoing* constitutional violation.") (emphasis added).

cannot be properly characterized as prospective." *Tigrett v. Cooper*, 855 F. Supp. 2d 733, 744 (W.D. Tenn. 2012); *Derezic v. Ohio Dep't of Educ.*, No. 2:14-cv-51, 2014 WL 4206580, at *5 (S.D. Ohio Aug. 25, 2014) ("[P]rospective relief aims to directly bring an end to a present violation of federal law by dictating an official's future conduct."). A complaint does not fall within this exception when it is "based entirely upon past acts and not continuing conduct that, if stopped, would provide a remedy to [the plaintiff]." *Gean*, 330 F.3d at 776. "The focus of the inquiry remains on the allegations only; it 'does not include an analysis of the merits of the claim.'" *Brunner*, 548 F.3d at 474 (quoting *Verizon Md. Inc.*, 122 S. Ct. at 1761).

Also, "a plaintiff must have standing to advance such a claim." *Campbell v. Univ. of Louisville*, 862 F. Supp. 2d 578, 584 (W.D. Ky. 2012). "Standing is 'the threshold question in every federal case.'" *Coyne*, 183 F.3d at 494. "[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017).

> In general, to establish standing to bring suit, a plaintiff must show that (1) he or she has "suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

*Fieger v. Ferry*, 471 F.3d 637, 643 (6th Cir. 2006) (internal quotation omitted). In a declaratory judgment action, "allegations of past injury alone are not sufficient to confer standing." *Id.* Instead, "when seeking declaratory or injunctive relief, the plaintiff must demonstrate actual present harm or a significant possibility of future harm to justify pre-enforcement relief." *Peoples Rights Org. v. City of Columbus*, 152 F.3d 522, 527 (6th Cir. 1998).

In a variety of contexts, courts have dismissed complaints at the pleading stage upon finding that the allegations do not satisfy the *Ex parte Young* requirements, including the ongoing

or threatened future injury component. *See Curry v. Ky. Cabinet for Health & Family Servs.*, No. 3:17-CV-00730-GNS, 2018 WL 1324159, at *4 (W.D. Ky. Mar. 14, 2018) ("[T]o survive Defendants' motion Plaintiffs must present facts sufficient to permit the reasonable inference that there is a high likelihood that: (1) state officials will use the regulation to violate their rights in the future, and (2) they will be harmed by the Department's retention of records containing their personal information."); *Burnette v. Univ. of Akron*, No. 5:11cv2361, 2012 WL 3587568, at *4 (N.D. Ohio Aug. 20, 2012) ("Indeed, the amended complaint is devoid of any allegation that the individually named defendants continue to violate Burnette's rights under the ADA or that there is any threat of future illegal conduct by defendants."); *Daugherty v. Timmerman-Cooper*, Civil Action 2:10-cv-01069, 2011 WL 3206844, at *6 (S.D. Ohio June 28, 2011) ("Although Plaintiff does request injunctive relief, he does not maintain that Defendants are continuing to subject him to the treatment that he contends violated his rights."), *report and recommendation adopted*, 2011 WL 3207053 (S.D. Ohio July 27, 2011).

Courts have disagreed over the level of Rule 12 rigor applicable to jurisdictional standing requirements. *See Hargett*, 947 F.3d at 982 (comparing *Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 & n.1 (10th Cir. 2010), with *James v. J2 Cloud Servs. LLC.*, 887 F.3d 1368, 1372 (Fed. Cir. 2018)).[6] The Sixth Circuit recently declined to decide the issue. *Id.* ("[W]e need not resolve how the pleading standards implicated by motions to dismiss under Civil Rule 12(b)(6) relate to the pleading standards implicated by motions to dismiss for lack of standing in Civil Rule 12(b)(1) motions[.]"). In any event, evident lack of standing at the pleading stage may lead to dismissal. *See Barber v. Miller,* 809 F.3d 840, 848–49 (6th Cir. 2015) (affirming

---

[6] *Hargett* noted that "standing-related cases before *Twombly* and *Iqbal* 'presum[ed] that general allegations embrace those specific facts that are necessary to support the claim.'" *Hargett*, 947 F.3d at 982 (citing *Lujan v. Defs. of Wildlife*, 112 S. Ct. 2130 (1992)).

dismissal on standing grounds because plaintiff "suffers no immediate threat of harm from the challenged [child-custody] statute greater than that of any other parent in Michigan"); *White*, 601 F.3d at 553–54 (affirming dismissal in part because "the chain of events necessary for the plaintiffs in this case to suffer false prosecution veers 'into the area of speculation and conjecture'").

Here, the proposed second amended complaint neither alleges a present federal law violation nor seeks relief fairly characterized as prospective. Although the proposed amended complaint demands "Declaratory and Injunctive relief as to all official capacity Defendants and the KSP," the Court "look[s] to the substance of the legal claim, not its formal description." *See S&M Brands, Inc*, 527 F.3d at 509. Plaintiffs' alleged injuries have already occurred; they (properly) seek damages as compensation. Even ignoring any inquiry into the merits, the complaint nowhere identifies, relative to the Thomases' asserted rights, an *ongoing violation of federal law*, a central *Ex parte Young* requirement. To the extent Plaintiffs seek a declaration that their rights were violated and that official KSP policies are to blame, the sought relief is not prospective and therefore falls beyond the bounds of *Ex parte Young*. *See Tigrett*, 855 F. Supp. 2d at 744 ("[R]etroactive declaratory relief cannot be properly characterized as prospective."). Nor does the demand for an injunction suggest how such prospective relief would provide a remedy *to Plaintiffs*. *See* DE 39 ¶ 96 ("Plaintiffs hereby seek to have this Honorable Court enjoin and or compel Commissioner Brewer and his predecessors to take appropriate remedial actions to prevent *all KSP Troopers* . . . .") (emphasis added).[7] For these reasons, Count Two (even as amended) is not

---

[7] The deficiencies in this respect likewise suggest a standing problem. *See City of Los Angeles v. Lyons*, 103 S. Ct. 1660, 1670 (1983) ("Absent a sufficient likelihood that he will again be wronged in a similar way, Lyons is no more entitled to an injunction than any other citizen of Los Angeles; and a federal court may not entertain a claim by any or all citizens who no more than assert that certain practices of law enforcement officers are unconstitutional."); DE 8 ¶ 87 (relying on and citing "the constitutional rights of criminal defendants and third parties").

cognizable under *Ex parte Young*, and sovereign immunity bars the claim. The joinder of Brewer would be futile.

### B.  Count One

Count One alleges that Defendant Troopers used excessive force after subduing Mr. Thomas—in violation of the Fourth and Fourteenth Amendment—and charged him with assault, despite a lack of probable cause—in violation of the Fourteenth Amendment. Regarding Count One, Defendants aver that *Heck* forecloses any false-arrest or malicious-prosecution theory. *See* DE 40 at 18–20, 23. In reply, Plaintiffs decline to discuss false arrest or malicious prosecution but maintain that *Heck* does not bar the excessive-force claim. *See* DE 41 at 19–20 ("There is no allegation that the arrest should not have happened.").

It is important to clarify the constitutional basis of each request for relief. *See Manuel v. City of Joliet*, 137 S. Ct. 911, 920 (2017) ("[T]he threshold inquiry in a §1983 suit . . . requires courts to 'identify the specific constitutional right' at issue."). Count One appears to assert at least two separate claims, as Plaintiffs challenge both the use of force after Mr. Thomas's arrest and the basis for one of the charges. The Court notes that Defendants seem to target only the allegations relating to false arrest and malicious prosecution; the response is silent as to Count One's excessive-force allegations. The Court analyzes this latter claim first.

When an "excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment." *Graham v. Connor*, 109 S. Ct. 1865, 1871 (1989). In contrast, a pretrial detainee may bring a Fourteenth Amendment claim for excessive use of force. *See Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). However, after the Supreme Court's decision in *Kingsley*, the difference in constitutional bases is a "purely academic" topic; "a pretrial detainee's excessive

force claim brought under the Fourteenth Amendment's Due Process Clause is subject to the same objective standard as an excessive force claim brought under the Fourth Amendment." *Clay v. Emmi*, 797 F.3d 364, 369 (6th Cir. 2015).

With respect to whether *Heck* bars an excessive-force claim, "[t]he key inquiry . . . is whether [the] excessive-force claim pursuant to § 1983 would have implied the invalidity of [the] criminal convictions." *Swiecicki v. Delgado*, 463 F.3d 489, 493 (6th Cir. 2006). The Sixth Circuit has recognized that "some excessive-force claims would not necessarily imply the invalidity of a conviction for resisting arrest." *See id.* at 495; *id.* at 504 (Sutton, J., concurring in part, concurring in the judgment, and dissenting in part) ("As a matter of sheer logic, one may bring a successful excessive-force claim without having to establish that the resisting-arrest charge was unlawful: An officer could legitimately arrest a suspect but use excessive force in bringing the suspect to the station.").

Here, the proposed second amended complaint is not futile insofar as *Heck* does not necessarily defeat the excessive-force claim. Plaintiffs have plausibly alleged an unconstitutional use of force that occurred after Mr. Thomas's act of resistance and any use of force reasonably necessary to subdue him. *See* DE 39 ¶ 82. At this stage, the Court entertains the possibility that the excessive-force claim does not imply the invalidity of Mr. Thomas's resisting-arrest conviction (or any other relevant conviction). For this reason, *Heck* does not absolutely bar all of Count One.

Next, the Court considers Count One allegations concerning the assault charge. *See id.* ¶ 86 ("Charging parties with a crime for which there is no probable cause or other justification is a violation of Mr. Thomas' 14th Amendment rights as well."). "An arrest is valid so long as there is probable cause for a single charge of an arrestable offense." *Miller v. Sanilac Cty.*, 606 F.3d 240, 248 (6th Cir. 2010). According to traditional formulations of § 1983 malicious prosecution, a

plaintiff bringing such a claim must show: "(1) a criminal prosecution was initiated against the plaintiff, and the defendant made[,] influenced, or participated in the decision to prosecute; (2) there was a lack of probable cause for the criminal prosecution; (3) the plaintiff suffered a deprivation of liberty, as understood under Fourth Amendment jurisprudence, apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor." *King v. Harwood*, 852 F.3d 568, 580 (6th Cir. 2017). "As *Heck* explains, malicious prosecution's favorable-termination requirement is rooted in pragmatic concerns with avoiding parallel criminal and civil litigation over the same subject matter and the related possibility of conflicting civil and criminal judgments." *McDonough v. Smith*, 139 S. Ct. 2149, 2156–57 (2019).

Here, under either constitutional tort that Plaintiffs may have intended to plead concerning the assault charge, the unchallenged existence of probable cause as to one charge may be an insurmountable bar to suit. Additionally, given that Mr. Thomas pleaded guilty to several offenses, the convictions for which have not been overturned or otherwise terminated in his favor, he could not satisfy the final *Heck*-influenced malicious-prosecution element. Finally, to the extent Plaintiffs allege that the supposedly deleted video would have "provide[d] evidence in [Mr. Thomas's] defense," this contention may impermissibly undermine his liability for one or more (unspecified) charges and likely violates *Heck*. *See* DE 39 ¶ 106. However, Plaintiffs' reply elsewhere suggests that the video "would have assisted her with her husband's excessive force claim," without mention of the adjudicated criminal charges. *See* DE 41 at 16, 20. In all, the Court declines to deny amendment on Defendants' stated grounds but notes the identified potential weaknesses with this aspect of Count One, which likely will cull parts of this count.

### C.  Count Three

Defendants argue that both variants of Count Three (under the Fourth and Fourteenth Amendment) fail to state a claim: conversion is an adequate state-law remedy that obviates the Fourteenth Amendment claim, and there is no Fourth Amendment claim when Defendants had unquestioned probable cause to seize the phone and searched it pursuant to a warrant. DE 40 at 7–9. To the extent Count Three asserts a fabrication/destruction of evidence or conspiracy claim, the theory fails because Mrs. Thomas lacks standing. *Id.* at 14–18. Defendants further assert that *Heck* bars this claim. *Id.* at 18–23. In reply, Plaintiffs contend that conversion is not an adequate state-law remedy because Defendant Troopers destroyed property in the form of an unrecoverable incriminating video and that Mrs. Thomas suffered a permanent deprivation of property in which she (defendant or no) had a constitutionally protected interest. *See* DE 41 at 13–19.

"The Due Process Clause of the Fourteenth Amendment guarantees that 'no State shall deprive . . . any person of life, liberty, or property, without due process of law.'" *Thomas v. Cohen*, 304 F.3d 563, 576 (6th Cir. 2002) (internal quotation omitted). Under the applicable two-step analysis, the Court must first "determine whether the interest at stake is a protected liberty or property right under the Fourteenth Amendment." *Id.* Then, the Court "consider[s] whether the deprivation of that interest contravened notions of due process." *Id.*

> [A] § 1983 plaintiff may prevail on a procedural due process claim by either (1) demonstrating that he is deprived of property as a result of established state procedure that itself violates due process rights; or (2) by proving that the defendants deprived him of property pursuant to a "random and unauthorized act" and that available state remedies would not adequately compensate for the loss.

*Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir. 1991). If such a state remedy is available, "and if due process given the particular wrong alleged requires only post-deprivation remedies, then

federal courts will require proof that those presumptively adequate remedies are inadequate before a § 1983 claim can be maintained." *Id.*

A few principles applicable to the Fourth Amendment topics: "[T]he [Fourth] Amendment protects property as well as privacy." *Soldal v. Cook Cty.*, 113 S. Ct. 538, 544 (1992). And, the Fourth Amendment applies in this manner even when some official activity does not also implicate a privacy or liberty interest. *Id.* at 545. The Supreme Court explicitly rejected the notion that the Fourth Amendment ceases to protect pure property interests outside the law-enforcement setting. *Id.* at 547 n.13. Regarding probable cause, an idea often intertwined with Fourth Amendment reasonableness, "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren v. United States*, 116 S. Ct. 1769, 1774 (1996). Also, the Fourth and Fourteenth Amendments guard property interests in general, not just in the criminal context. *See Soldal*, 113 S. Ct. at 547 n.13; *Thomas*, 304 F.3d at 576. In other words, a § 1983 plaintiff may have standing to bring a claim even without having first been a criminal defendant.

Here, Mrs. Thomas's Fourteenth Amendment claim would not necessarily be defeated by a motion to dismiss. The complaint alleges that Mrs. Thomas had both a property and liberty interest in the contents of her cell phone: in particular, in the supposed recording of Defendant Troopers beating her husband. She seeks to recover damages for the alleged deletion of this recording. The theory therefore hinges on an "unauthorized act" for which there is no adequate post-deprivation remedy. *See Macene*, 951 F.2d at 706. Although not explicit in the complaint itself, Plaintiffs suggest that no adequate state-law remedy exists for such a claim, which they liken to spoliation of evidence. *See* DE 41 at 13–15.

Nor is the Fourth Amendment variant of Count Three necessarily futile. Plaintiffs do not seem to contest that probable cause existed—at least as an objective matter—or that the phone was

eventually searched pursuant to a warrant. Deficiencies in either regard do not give rise to supposed liability. Instead, Count Three points to the ill intentions of Defendant Troopers. *See* DE 39 ¶ 99 ("The Defendant Troopers took the phone from Mrs. Thomas to destroy the video evidence on the phone, not to preserve evidence."). Plaintiffs further charge Defendant Troopers with a pre-warrant unreasonable search and categorize the alleged deletion of the video as an unreasonable seizure. *See* DE 41 at 16–17. Although Defendant Troopers' intent is irrelevant as a Fourth Amendment matter, *see Whren*, 116 S. Ct. at 1774, the Fourth Amendment protects Mrs. Thomas's property interest in her phone's contents regardless of whether Defendant Troopers otherwise complied with search and seizure requirements in the law-enforcement context. *Cf. Soldal*, 113 S. Ct. at 547 n.13.

In this case, the standing requirement does not bar Mrs. Thomas from vindicating her own property interests. In contrast, the authority cited by Defendants may apply (and likely bar suit) if she instead sought to challenge Mr. Thomas's deprivation of liberty flowing from the arrest.

As far as *Heck*, the analysis as to Count Three basically tracks the discussion as to Count One. That *Heck* may bar a false-arrest claim—given that Mr. Thomas does not challenge the underlying convictions—does not categorically foreclose any other constitutional claim arising out of the events of the night in question. Regarding the conspiracy and fabrication allegations, Plaintiffs allege that Defendants conspired to hide the deletion of a video that would have shown Defendant Troopers using excessive force on Mr. Thomas. At this stage, *Heck* bars neither the underlying claim (excessive force) nor the related counts; none necessarily calls into question the validity of Mr. Thomas's convictions. *See Swiecicki*, 463 F.3d at 495.

\* \* \* \* \*

19

On the terms outlined above, the Court allows the second amended complaint. The Court anticipates no more amendments. Plaintiffs have had multiple chances to get it right, so this will be the operative pleading that decides the case. The parties have skirmished mightily, nay excessively, at the threshold in this case. It is time to get the case into the discovery and merits phase. This does not necessarily preclude a motion to dismiss on the latest amendment. *See* Fed. R. Civ. P. 15(a)(3). If such a motion occurs, the Court encourages efficient and targeted briefing and argument. The Court would anticipate an accelerated resolution schedule if Defendants choose again to seek dismissal rather than answering under Rule 12.

### D.  Other Motions

As summarized above, aside from the motion for leave to amend (DE 26), three others pend: Defendants' motion for judgment on the pleadings (DE 18) and motion to strike (DE 29), and Plaintiffs' motion for leave to file an untimely response (DE 30). Given complaint amendment, the motion for judgment on the pleadings is now moot. *See Drake v. City of Detroit*, 266 F. App'x 444, 448 (6th Cir. 2008) (noting that "an amended complaint supersedes all prior complaints"); *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 306 (6th Cir. 2000). As a result, the motions relating to Plaintiffs' untimely response are likewise moot.[8]

### V.   CONCLUSION

Accordingly, the Court **ORDERS** as follows:

1. The Court **GRANTS IN PART** DE 26 and **DIRECTS** Plaintiffs to file, **by May 21, 2020**, an amended complaint consistent with the terms of this Order. Thus, the Second Amended Complaint should omit Count Two and Commissioner Brewer. Defendants

---

[8] In any event, the targeted pleading (DE 25) was mere days late and happened well before the later pleading aimed at striking the filing from the docket (DE 29). This type of jousting does little to advance the case or the Court's docket.

shall answer or otherwise plead within fourteen days of service of the amended pleading; and

2. The Court **DENIES AS MOOT** DE 18, DE 29, and DE 30.

This the 11th day of May, 2020.

**Signed By:**

*Robert E. Wier*

**United States District Judge**